## EQUALITY, INC.

v.

## I–LINK COMMUNICATIONS.

### No. 3:98CV894 (JBA).

United States District Court, D. Connecticut.

Dec. 2, 1999.

228

Daniel J. Klau, Wiggin & Dana, Hartford, CT, for Equality Inc., and Equality Plus Telecommunications Corp., plaintiffs.

Donna Nelson Heller, Patrick J. McHugh, Finn Dixon & Herling, Stamford, CT, John H. Bogart, Richard W. Casey, Jeffery S. Williams, Giauque, Crockett, Bendinger & Peterson, Salt Lake City, UT, for I–Link Communications Inc., defendant.

## OPINION

ARTERTON, District Judge.

On August 10, 1999 Defendant I–Link Communications filed its first amended counterclaim, alleging that plaintiffs, Equality, Inc. and Equality Plus Telecommunications Corporation ("the Equality Entities"), had engaged in abuse of process and unfair trade practices in this litigation. Equality Entities, as counterclaim defendants, moved to dismiss these counterclaims on September 10, 1999. For the reasons that follow, Equality Entities' motion (Doc. # 45) is GRANTED.

## I. STANDARD

A district court may not dismiss a claim under Fed.R.Civ.P. 12(b)(6) unless it is apparent beyond a doubt to the court that the plaintiff can prove no set of facts to support a claim which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In deciding a motion to dismiss, all well-plead factual averments in the complaint must be taken as true, and all reasonable inferences must be drawn in the plaintiff's favor. *See Wright v. Ernst & Young*, 152 F.3d 169, 173 (2d Cir.1998). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.,quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## II. DISCUSSION

■ In its counterclaims, defendant asserts that the "Equality Entities' tortious interference claim has no merit. The Equality Entities have asserted this claim and have prosecuted this action primarily to gain unwarranted leverage in business negotiations and to have a claim of set-off to sums they undisputably owe to I–Link...." Counterclaim, ¶ 6. In general, the counterclaim alleges that plaintiffs themselves breached the underlying contract with Nu–Skin, and that they have carefully styled the complaint to avoid preemption and "maintain litigation pressure on I–Link" in an action brought by I–Link in Utah to recover money owed by Equality, Inc. Plaintiffs seek to dismiss the counterclaims on the grounds that although titled "abuse of process" and "unfair trade practices," the claims at issue are really claims for vexatious litigation, and thus not actionable until and unless the underlying litigation has concluded in defendant's favor.

The Connecticut Supreme Court has held that a claim for the tort of vexatious litigation cannot be maintained when the underlying lawsuit whose propriety is challenged terminates in a good-faith negotiated settlement. *See Blake v. Levy*, 191 Conn. 257, 464 A.2d 52 (1983). In the context of deciding this issue, the *Blake* court note that the pleading standards for such a claim "require[ ] the plaintiff to allege that the previous lawsuit was initiated maliciously, without probable cause,

and terminated in the plaintiff's favor." *Id.* at 263, 464 A.2d 52. The latter requirement was deemed "sound policy" by the court, as it "serves to discourage unfounded litigation without impairing the presentation of honest but uncertain causes of action to the courts." *Id.* The one court in this district to permit a vexatious litigation counterclaim based on reasons of judicial economy, indicating "the question of whether [the defendant] was sued vexatiously can be considered along with the merits of that claim and a decision on the counterclaim rendered speedily after the main suit is terminated, without the necessity of a separate proceeding," did so only six days after *Blake* was issued, and makes no reference to it.[1] *See Hydro Air of Connecticut v. Versa Technologies,* 99 F.R.D. 111, 113 (D.Conn.1983). Instead, it cited to a 1967 Connecticut Circuit Court case, *Sonnichsen v. Streeter,* 4 Conn. Cir. Ct. 659, 666–667, 239 A.2d 63 (1967).[2]

While a few Superior Courts have relied on *Hydro Air* in allowing contemporaneous vexatious litigation counterclaims, *see Pattrell v. Ayers,* 1994 WL 119027, 11 Conn. L. Rptr. 346 (March 31, 1994) (Dranginis, J.), the vast majority of Connecticut's trial courts, relying on *Blake's* requirement that the previous litigation be terminated, have concluded that "it is impossible to use vexatious litigation as a counterclaim in the very suit that the defendant claims is vexatious." *Bodek v. Productivity,* 1998 WL 389147 (Conn.Su-

per.1998) (citing cases). The Court agrees with this conclusion, and the reasoning that lies behind it.

■ In contrast, the tort of abuse of process does not require that the prior litigation has terminated. Problematically, the torts of vexatious litigation and abuse of process are often conflated or confused. *See, e.g. Lewis Truck and Trailer v. Jandreau,* 11 Conn.App. 168, 526 A.2d 532 (1987). Recognizing this propensity to confuse, the Appellate Court sought to distinguish between the two torts, quoting extensively from Prosser & Keeton:

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance. Consequently, in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause." W. Prosser & W. Keeton, Torts (5th Ed:1984) § 124.

11 Conn.App. at 170–71, 526 A.2d 532. The process alleged to be abusive in that case was a prejudgment remedy of attachment for the purpose of securing repay-

---

**1.** The Connecticut Supreme Court has subsequently reaffirmed this principle, stating that "it is recognized to be sound policy to require the plaintiff to allege that prior litigation terminated in his favor." *Zeller v. Consolini,* 235 Conn. 417, 424, 667 A.2d 64 (1995). That case addressed the question of whether the prior litigation could be said to have terminated in the plaintiff's favor, when he was not a party to the previous action but instead was majority shareholder of a corporate party. The extensive discussion in *Zeller* of this element demonstrates the continuing validity of the requirement.

**2.** While the late Judge Maloney, concurring in *Pinsky v. Duncan,* 898 F.2d 852, 860 (2d

Cir.1990) (holding Connecticut's pre-judgment attachment remedies unconstitutional), was of the view that *Sonnichsen* "appears to establish a Connecticut rule that damages for vexatious litigation may be recovered by counterclaim," he also made no reference to how subsequently-decided *Blake* altered *Sonnichsen. See Yale–New Haven Hospital v. Orlins,* 6 Conn. L. Rptr. 364 (July 2, 1998) (noting abrogation of *Sonnichsen* by *Blake,* and that Connecticut Superior Courts are not bound by precedent of former statutory Circuit Court, especially where that precedent conflicts with the holding of the state Supreme Court).

ment, even when it was probable that the debt could not be enforced as a result of a statute precluding charges for repair work done without authorization. Absent any evidence that the attachment was used for any purpose other than securing payment, no abuse was shown in the use of this process, even though the attachment may not have been warranted under law.

Thus, the tort of vexatious litigation primarily is concerned with the plaintiff's motive in prosecuting a lawsuit. Abuse of process, in contrast, can occur at anytime, including during the pendency of the litigation, and is unrelated to the intent behind the lawsuit; rather, the allegation of abuse focuses on the actual application of a particular legal process, and whether it has been applied for an end outside the scope of purpose for which the process was designed. The Connecticut Supreme Court addressed the issue at length in *Mozzochi v. Beck*, 204 Conn. 490, 529 A.2d 171 (1987):

> Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a 'legal process' ... against another primarily to accomplish a purpose for which it is not designed.... Comment b to § 682 explains that the addition or 'primarily' is meant to exclude liability "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."

204 Conn. at 494, 529 A.2d 171 (internal citations omitted). In *Mozzochi*, the plaintiff alleged that the defendants filed amended pleadings when they "knew that the allegations of those amendments were false," and refused to withdraw the action after learning that it was utterly without merit. *Id.* In affirming the trial court's decision to strike this abuse of process claim, the Connecticut Supreme Court fo-

cused on what the complaint did *not* allege:

> There is no claim that the defendants undertook any action outside the normal course of proceedings in the [underlying] case itself. For example, there is no claim that the defendants used the pleadings or the process in the [underlying case] as leverage to coerce the plaintiff to pay a debt or surrender property unrelated to that litigation. Similarly, there is no claim that the defendants used unreasonable force, excessive attachments or extortionate methods to enforce the right of action asserted in the [underlying case]. Finally, there is no claim that the defendants' purpose in pursuing the [underlying case] was to gain any collateral advantage extraneous to its merits. The only injury of which the plaintiff complains is that the defendants improperly continued to pursue the [underlying case] in order to enrich themselves ... at the plaintiff's expense.

*Id.* at 493–94, 529 A.2d 171.

█ In this case, I–Link does allege that plaintiff is utilizing the Connecticut litigation as a whole to achieve a set-off against any debts owed in Utah, and advantage itself in that litigation. However, under Connecticut law seeking a setoff in the context of multiple claims between parties is not an improper motive; in fact, bringing such claims as counter claims is permitted by statute:

> In any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other.

Conn. Gen.Stat. 52–139(a). Further, these claims raise, at the most, allegations of "incidental motive of spite or an ulterior purpose of benefit to the defendant," *Mozzochi*, 204 Conn. at 494, 529 A.2d 171, and as such are not sufficient. The Court also observes that the Utah litigation is not completely "unrelated" to the Connecticut litigation, as the same parties and some of

the same general facts are involved; in fact, plaintiff sought to have the claims in the Utah suit brought in the Connecticut action as compulsory counterclaims, a motion which this Court denied. *See* Ruling on Pending Motions, July, 1999 (Doc. # 33).

The Second Circuit recently addressed the elements of a cause of action for abuse of process under Connecticut law in *Doctor's Assoc. v. Weible*, 92 F.3d 108 (2d Cir.1996). While *Weible* addressed the propriety of a jury charge on the issue, the case is instructive and has been cited by both parties. Citing extensively to *Mozzochi*, the Restatement, and other Connecticut state and federal courts, the *Weible* court concluded that:

> [u]nder Connecticut law, a party does not abuse the legal process merely by filing suit. This is true regardless of the plaintiff's motive .... Rather, liability for abuse of process lies only when the offending party overtly misuses the process once the proceeding has begun .... In short, no matter what misconduct by the tortfeasor occurs before the commencement of suit, it is not, in itself, an abuse of process because there is not yet process to abuse.

92 F.3d at 114. *See also Lodges 743 & 1746 v. United Aircraft Corp.*, 534 F.2d 422, 465 (2d Cir.1975) ("Abuse of process requires more than simply improper motive. There must also be some action taken to utilize the court's processes for collateral purposes not related to the suit in question ....").

Even liberally construed, the Court concludes that the defendant's "abuse of process" counterclaim does not fit within these parameters. The majority of the allegations address the plaintiffs' motivation and state of mind prior to bringing the suit. *See* Def. Counterclaim ¶ 3, 5–14. In paragraph 6, I–Link alleges that the claim has no merit, and argues that the plaintiffs brought the suit to "gain unwarranted leverage in business negotiations" and provide a set-off to the Utah litigation. *Wei-*

*ble*, 92 F.3d at 114, makes clear, however, that a party does not abuse the legal process merely by filing suit, "regardless of the plaintiff's motive." *See also Mozzochi*, 204 Conn. at 493, 529 A.2d 171. Paragraph 7 involves an allegation that the plaintiffs did not sufficiently investigate the claim before bringing it, referencing in paragraphs 7–9 a letter dated August 28, 1997, by which Equality Inc. was purportedly notified that it had breached a contract with Nu–Skin and thus was on notice that it had no claim for tortious interference with contract. ¶¶ 11–14. These allegations all refer to facts that predate the May 1998 filing of plaintiffs' complaint, and thus cannot form the basis of an abuse of process claim. *See Weible*, 92 F.3d at 114 ("In short, no matter what misconduct by the tortfeasor occurs before the commencement of suit, it is not, in itself, an abuse of process because there is not yet process to abuse.")

■ The defendant's counterclaims also attack the pleadings of the plaintiff as abuse of process, asserting that the "allegations of the Equality Entities are selective and omit critical information that would reveal that the claim of the Equality Entities against I–Link is without merit." Def. Counterclaim ¶ 21. As was the case in *Mozzochi*, there is no claim that the plaintiffs here "undertook any action outside of the normal course of proceedings in the [underlying case] itself." 204 Conn. at 493, 529 A.2d 171. Pleading facts favorable to one's self and omitting others less favorable does not rise to the level of using "a legal process against another primarily to accomplish a purpose for which it is not designed." *Id.* at 494, 529 A.2d 171.

■ The counterclaim also characterizes plaintiffs' entire litigation strategy as abuse of process. *See* Def. Counterclaim ¶¶ 5, 15, 16, 17. In this regard, the only allegations in the counterclaims that purport to implicate an actual legal process in this case, and that allege misconduct occurring after the initiation of suit, relate to

the amended complaint and Equality's alleged attempts to circumvent preemption. Paragraph 5 alleges that:

> after being informed that [the original] causes of action were preempted as a matter of law by controlling Supreme Court authority, the Equality Entities contrived allegations of tortious interference in an effort to plead around the preemption doctrine and continue this litigation in Connecticut.

Paragraph 15 makes substantially similar allegations. As an example, I–Link points to the fact that plaintiffs argued against the transfer of this case to Utah because of the need for discovery from individual customers. This strategy was abusive, I–Link alleges, because the plaintiffs knew or should have known that NuSkin would be the only customer at issue. *Id.* at ¶ 16. However, opposition to a motion for change of venue involves no "legal process."[3] Further, I–Link's allegations regarding plaintiffs' amendments to the complaint cannot be the basis of a claim that legal processes were used improperly, since the alleged conduct is not outside the acceptable litigation strategy of pleading cases in a way that seeks to avoid dismissal.

■ I–Link's final allegation is that "[t]he process instituted by Equality and continued by the Equality Entities was brought and has been prosecuted primarily for improper and collateral purposes, unrelated to the merits, or lack thereof, of the alleged claim of the Equality Entities against I–Link." Def. Counterclaim ¶ 23. While this allegation tracks some of the Restatement language quoted in *Mozzochi,* the conduct of filing an amended complaint is not the sort of "overt misuse" or "wilful act" that the Second Circuit has recognized as constituting abuse of process, *see*

*Weible,* 92 F.3d at 114. Similar to this case, the *Weible* defendant's counterclaim lacked allegations of any particularized act of misconduct during the legal proceedings, and contained only the alleged collateral purpose of forcing the defendant to settle his arbitration and state law claims against the plaintiff, which allegations were deemed "tenuous at best," because the suggested collateral purposes were "not necessarily inappropriate." *Id.* at 116. I–Link's allegation here is akin to the one struck in *Mozzochi* as "so general an allegation of abuse [that it] does not satisfy the requirement of showing the use of legal process 'primarily to accomplish a purpose for which it is not designed....' " *Mozzochi,* 204 Conn. at 497, 529 A.2d 171.

At the core, I–Link's argument is not distinguishable from the claim for abuse of process which the Connecticut Supreme Court disposed of in *Mozzochi:* "The only injury of which the plaintiff complains is that the defendants *improperly continued* to pursue the [underlying case] in order to enrich themselves...." 204 Conn. at 494, 529 A.2d 171(emphasis added). There are no allegations that the specific processes challenged here were misused or misapplied for an end other than those which they were designed to accomplish; instead, these procedures are challenged only as examples of the ulterior motive and general lack of merit in plaintiffs' complaint *in toto.* This is precisely the allegation *Mozzochi* rejected in concluding that no claim for abuse of process was stated where the key allegation was "that the defendants *continued* to pursue litigation for an unlawful ulterior purpose." 204 Conn. at 497, 529 A.2d 171 (emphasis added). Accordingly, I–Link's claim for abuse of process is precluded by controlling Connecticut Supreme Court precedent.[4]

---

**3.** Prosser and Keeton list the kinds of process that have potential for abuse, including "attachment, execution, garnishment, lis pendens, sequestration proceedings, arrest of the person and criminal prosecution and even such infrequent cases as the use of a subpoena for the collection of a debt." Prosser & Keeton, Torts 5th Ed.–1 1988 P.P., § 121. While this list is illustrative rather than exhaustive, it demonstrates the sorts of process that are within the contemplation of this tort.

**4.** As defendant's counterclaim under CUTPA merely repeats the allegations of the abuse of process counterclaim, that claim also fails.

Therefore, Equality Entities' motion to dismiss the amended counterclaim (Doc. # 45) is GRANTED.

IT IS SO ORDERED.

*See Sussman v. D.A.N. Joint Venture II,* 1997 WL 85211 (1997) (since complaint did not state cause of action for vexatious litigation or abuse of process, CUTPA claim struck, as CUTPA cause of action based on public policy against those practices must be consistent with the common law requirements for establishing the tort). It would be a contrary rule that disallowed vexatious litigation counterclaims disguised as abuse of process counterclaims, yet permitted such allegations under CUTPA.