**Andree J. LEOPOLD, Plaintiff–Appellant,**

**v.**

**BACCARAT, INC., Defendant–Appellee.**

**Docket No. 98–7474.**

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1998.

Decided April 20, 1999.

**264**

Ludwig A. Saskor, Holland & Knight LLP, New York, N.Y. (Barbara S. Friedman, of counsel), for Plaintiff–Appellant.

Jeffrey H. Daichman, Kane Kessler, P.C., New York, N.Y. (Judith A. Stoll, of counsel), for Defendant–Appellee.

Before: VAN GRAAFEILAND, CABRANES and NOONAN,* Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Plaintiff Andree J. Leopold appeals from a judgment of the United States District Court for the Southern District of New York (John S. Martin, Jr., *Judge*), following a jury trial on her claims that her employer, defendant Baccarat, Inc. ("Baccarat") fired her on account of her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 *et seq.*, and that she had been subjected to a hostile work environment (on account of sex) during the term of her employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the NYHRL.[1] After the close of Leopold's evidence, the district court granted Baccarat's motion for judgment as a matter of law as to the hostile work environment claim. The court allowed the jury to consider the age discrimination claim following Baccarat's case, and the jury returned a verdict for Baccarat.

On appeal, Leopold argues that the evidence presented at trial was sufficient to allow a reasonable jury to return a verdict in her favor on her hostile work environment claim and that the district court therefore erred in granting Baccarat's motion for judgment as a matter of law. We agree. Leopold also argues that the court erred in admitting prejudicial testimony that she had made bigoted comments to and about various co-workers, that the court erred in excluding evidence of the discharge of other employees in their 50s and 60s, and that she is therefore entitled to a new trial as to her age discrimination claim. We disagree.

Accordingly, we (1) affirm the district court's judgment to the extent that it incorporates the jury verdict on the age discrimination claim, (2) vacate the judgment to the extent that it incorporates the grant of judgment as a matter of law on

---

* The Honorable John T. Noonan, Jr., of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. Because New York courts require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII, we analyze these claims in tandem. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n. 4 (2d Cir.1995). Our holding with respect to Leopold's Title VII claim applies with equal force to her hostile work environment claim under the NYHRL.

the hostile work environment claim, and (3) remand for a new trial on the hostile work environment claim.

## I.

From August 1971 until her discharge on July 29, 1994, Leopold worked for Baccarat, a maker and retailer of fine china and crystal, at its New York store. For all but her first three years there, Leopold worked in the retail showroom as a saleswoman. Following her discharge, at the age of 62, Leopold filed the present action in the district court. Her complaint alleged that she had been fired on account of her age, in violation of the ADEA and the NYHRL, and that prior to her discharge, her workplace "was permeated with a discriminatorily hostile and abusive environment of sexual harassment," an atmosphere that was "tolerated, encouraged and fostered" by Baccarat in violation of Title VII and the NYHRL.

After the completion of discovery and prior to trial, each party filed a motion *in limine* seeking to exclude certain evidence expected to be offered by the other at trial. In particular, Leopold sought to exclude, *inter alia*, evidence that she had made certain bigoted comments: (1) a statement to a Jewish co-worker that "they should have made you a lamp shade like the rest of you people," (2) remarks that a former store manager was gay and suffered from AIDS, (3) remarks that another co-worker was suffering from a nervous breakdown, and (4) a statement that a third co-worker "is a Latin" who "has problems with women telling him what to do." Baccarat sought to exclude, *inter alia*, (1) evidence of the termination of another former employee, Irma Rivera, which occurred one year after Leopold was fired and under a new supervisor and a new company president, (2) testimony by two former employees, Maxine Kroyder and Beatrice Wishnick, concerning the termination of their employment in Baccarat's accounting department, and (3) evidence that Leopold's former supervisor had referred to himself as a "Nazi" and had stated that he "admires Nazis."

At a pre-trial conference, the district court heard argument and then denied Leopold's motion to exclude the evidence of her comments, denied Baccarat's motion to exclude the testimony of Kroyder and Wishnick, and granted Baccarat's motion to exclude the evidence of Rivera's termination and of the supervisor's "Nazi" comments. In addition, on the first day of trial but before jury selection, the court granted Baccarat's motion to exclude testimony by Leopold that Baccarat had terminated several employees—other than herself, Rivera, Kroyder, and Wishnick—after they had reached their early 60s.

At trial, Leopold's evidence of hostile work environment consisted entirely of her own testimony that her supervisor, Jonathan Watts, had made certain statements between June 1992, when he was hired as store manager, and July 1994, when Leopold was dismissed. Specifically, Leopold testified that Watts "threatened ... to fire us [the saleswomen]" and that he "said he wanted to change the sales staff and that he wanted young and sexy on the [sales] floor." At various times during her direct testimony and while under cross-examination, Leopold stated that Watts made such comments "continually," "practically weekly," "[s]everal times," "[r]epeatedly," and "everyday [sic] once or twice a week [sic]." In addition, Watts "used to say" that one of Leopold's co-workers had a high number of sales because " 'she flirts and attracts all the male customers,' " and he "said [to Leopold] a few times, 'For your age you're in very good shape.' " Leopold testified that at a Christmas dinner, Watts responded angrily to criticism by the saleswomen and "screamed" at them: " 'You're nothing but a bunch of pussies,' he said, 'You don't know how to sell.' " [2] Finally,

2. One man—Manuel Lopez—was also present among the harangued employees. Inasmuch

as Lopez apparently worked as the warehouse/shipping manager and Watts's com-

Watts instigated arguments among the saleswomen and, when confronted, explained that " 'I love it when women fight.' "

On the age discrimination claim, Leopold's case-in-chief—which is not directly relevant to this appeal—consisted primarily of her own testimony that Watts had made the "young and sexy" comments, that Watts had made other statements to the effect that in his prior employment he had "fired everybody over 60" because "he believes in . . . hav[ing] younger people in the store," and that Baccarat's president, upon notifying Leopold of her termination, had explained that "you're 62 years old now, you have a pension." Leopold also introduced exhibits reflecting an above-average employee evaluation in early 1993, and the absence of any appreciable reduction in commissions earned by her in 1993 and 1994, as compared with earlier years. Finally, Leopold introduced—over Baccarat's objection—testimony by Kroyder and Wishnick, the two former employees who had worked in Baccarat's accounting department; each stated that her employment had been terminated at age 62.

After Leopold's case-in-chief concluded, Baccarat moved for judgment as a matter of law on both claims. The district court denied the motion as to the age discrimination claim, but granted the motion as to the hostile work environment claim, explaining simply that "the testimony here of the plaintiff is not sufficient to show that the conduct alleged by Mr. Watts was so severe or persuasive [sic] to alter the conditions of plaintiff's employment and create an abusive working environment."[3]

The trial continued on the age discrimination claim, with Baccarat's evidence consisting primarily of testimony by Watts, who stated that he had recommended termination of Leopold's employment. According to Watts, "there were difficulties involving Ms. Leopold with almost every employee that worked at the store." Specifically, Watts testified that Leopold had made several bigoted remarks; as noted above, Leopold earlier had sought to exclude such evidence. In this connection, Watts stated that Leopold told him on several occasions that his predecessor as store manager was gay and suffered from AIDS, that a Jewish saleswoman had recounted to him how, before his arrival, Leopold "told her words to the effect that they should have made a lamp shade out of you like the rest of your people," and that Leopold "had very derogatory anti-Hispanic things to say about" a co-worker born in Cuba.

In addition, Watts testified that Leopold was generally critical of everyone in the store from the company president, whom she referred to on several occasions as "worthless and useless," to other saleswomen, one of whom she referred to as "dumb," to the people who did the cleaning. Finally, according to Watts, Leopold had refused to comply with his instructions, in April 1994, to contact corporate customers on a regular basis, and she had responded poorly to his criticism, in May 1994, based on multiple complaints by a customer. In conclusion, Watts testified that he recommended termination of Leopold's employment, despite her "adequate" product knowledge and sales ability, because of "her continuing conflicts with almost every employee in the store" and "the severe difficulty [he] had in managing her."

---

ments appear to have been addressed only to the sales staff, Lopez may not have been in the class of employees to which this vulgarism referred.

**3.** The district court recognized that deferral of such a ruling until after a jury verdict would eliminate the need for a new trial if this Court were to disagree. *See, e.g., Konik v. Cham-*

*plain Valley Physicians Hosp. Med. Ctr.,* 733 F.2d 1007, 1013 n. 4 (2d Cir.1984) (advising that deferral is the preferable approach). Nevertheless, the district court ruled on the motion for judgment as a matter of law because it concluded that submission of both claims to the jury would create a "danger of a compromised [sic] verdict."

After testimony by two of Leopold's former co-workers and brief rebuttal testimony by Leopold during which she denied most of the testimony of Baccarat's witnesses, the jury heard summations and received the district court's charge on the age discrimination claim only. The jury returned a verdict for Baccarat. The district court entered a judgment accordingly, and this timely appeal followed.

## II.

■ Leopold first argues that the district court erred in granting the defendant's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a).[4] Rule 50 allows a trial court to enter judgment as a matter of law in favor of a defendant after the close of the plaintiff's case "if, with respect to an issue essential to the plaintiff's case, there is no legally sufficient evidentiary basis for the jury to find in favor of the plaintiff." *Piesco v. Koch,* 12 F.3d 332, 340 (2d Cir.1993) (citing Fed. R.Civ.P. 50(a)). The district court may only grant such a motion if, "viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion

as to the verdict that reasonable [persons] could have reached.'" *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1154–55 (2d Cir.1994) (quoting *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970)). We review *de novo* the district court's grant of a Rule 50 motion. *See United States v. Landau,* 155 F.3d 93, 100 (2d Cir.1998).

■ In order to prevail on her hostile work environment claim, Leopold was required (1) to prove discriminatory conduct that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted), and (2) to "show that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997). In entering judgment as a matter of law on the hostile work environment claim, the district court decided the first of these issues against Leopold.[5] Accordingly, the first issue on appeal is whether the evidence presented in Leopold's case-in-chief, when viewed in the light most favorable to Leopold, would al-

---

4. The rule provides:

Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment. Fed.R.Civ.P. 50(a).

5. Although the district court did not reach the second element, we note the Supreme Court's recent holding on an employer's liability for

the creation of a hostile work environment by a supervisor such as Watts:

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule. Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998).

low a reasonable juror to conclude that Watts engaged in discriminatory conduct that was sufficiently severe or pervasive to alter the conditions of Leopold's employment and create an abusive working environment.

■■■ Such a conclusion requires a finding both (1) that there existed "an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive," and (2) that the plaintiff "subjectively perceive[d] the environment to be abusive." *Harris*, 510 U.S. at 21, 114 S.Ct. 367; *see Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). The conclusion must be based on an assessment of "all the circumstances" of the case, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

■■■ In the instant case, Baccarat argued to the district court that Watts's comments were too few in number to be actionable under Title VII, and that Leopold had not subjectively perceived her work environment as abusive because her only reaction to Watts's conduct had been a feeling of "distaste" with respect to the vulgar comment at the Christmas dinner.[6] On the latter point, Baccarat maintained

that the standard set forth by the Supreme Court in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), requires a showing of an adverse impact on a plaintiff's work performance, which Leopold arguably admitted was absent here. This reading of *Meritor* is incorrect; the Supreme Court in that case, relying on EEOC regulations, defined "sexual harassment" in the disjunctive to include conduct that " 'has the purpose or effect of unreasonably interfering with an individual's work performance *or* creating an intimidating, hostile, or offensive working environment.' " *Id.* at 65, 106 S.Ct. 2399 (quoting 29 C.F.R. § 1604.11(a) (1985)) (emphasis added).[7] Interference with work performance is, as the Supreme Court explained more recently in *Harris*, merely one of the many relevant factors to be considered by courts in "looking at all the circumstances" of the case. 510 U.S. at 23, 114 S.Ct. 367.

In fact, the district court in this case did not seem to rely on any absence of interference with Leopold's work performance. Although the court did not explain its reasoning in any detail, it appeared to conclude that the only conduct to have occurred with any frequency—Watts's repeated threats to fire Leopold and her co-workers and replace them with "young and sexy" hires—was simply insufficient to demonstrate "an environment that is hostile to a person because

6. On appeal, Baccarat also claims that Leopold did not allege a hostile work environment or even mention Watts's conduct in her complaints to the Equal Employment Opportunity Commission. Baccarat does not argue here that Leopold failed to exhaust available administrative remedies, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (exhaustion requirement is "subject to waiver"); instead, Baccarat contends that Leopold's EEOC complaint—or the lack thereof—affirmatively establishes the absence of a subjective perception by Leopold that her work environment was hostile or abusive. However, Baccarat did not rely on this argument when it made its motion, and nothing in the record suggests that this consideration influenced the district

court's decision. Because Leopold had no notice of this asserted basis for judgment as a matter of law and, therefore, no opportunity to cure any deficiency in her proof, we decline to consider whether the district court properly could have granted the motion on this ground. *Cf. Doctor's Associates, Inc. v. Weible*, 92 F.3d 108, 112 (2d Cir.1996) (a motion for judgment notwithstanding the verdict, which "is technically a renewal of a motion" for judgment as a matter of law that previously has been denied, ordinarily may not be based "on any ground not specifically raised in [the] earlier motion").

7. This language remains unchanged in the 1998 version of 29 C.F.R. § 1604.11(a).

of her sex." We disagree. First, the evidence at trial did not preclude a finding that Watts's threats were discriminatory on the basis of sex.[8] Second, however benign the mere use of the word "sexy" might seem, its incorporation into a threat of employment termination could reasonably be viewed as a form of discriminatory intimidation. Third, while Leopold's testimony was somewhat inconsistent with respect to the frequency of the comments, that evidence must be viewed in the light most favorable to Leopold as the nonmoving party, and it is sufficient to support a finding that Watts's threats were more "continuous and concerted"—that is, pervasive—than "episodic" or "sporadic." *Perry*, 115 F.3d at 149; *Schwapp*, 118 F.3d at 110. We believe that, taken together, such findings could reasonably lead to a conclusion that Watts engaged in discriminatory conduct that was sufficiently severe or pervasive to alter the conditions of Leopold's employment and create an abusive working environment.[9]

Accordingly, we find that the district court erred by taking the hostile work environment claim from the jury, we vacate the district court's entry of judgment as a matter of law, and we remand for a new trial on that claim.

## III.

Leopold's remaining points on appeal concern the district court's denial of her *in limine* motions to exclude certain evidence that was ultimately introduced by Baccarat with respect to the age discrimination claim.

Primarily, Leopold claims that the district court abused its discretion when it admitted evidence of bigoted comments by her, such as the evidence that (1) she repeatedly told Watts that his predecessor as store manager was gay and suffered from AIDS, (2) she said to a Jewish co-worker that "they should have made a lamp shade out of you like the rest of your people," and (3) she "had very derogatory anti-Hispanic things to say" about a co-worker born in Cuba. According to Leopold, this evidence should have been excluded under Fed.R.Evid. 403[10] because its probative value was substantially outweighed by the danger of undue prejudice and by considerations of needless presentation of cumulative evidence. We review rulings on admissibility under Rule 403 for abuse of discretion. *See, e.g., Hathaway v. Coughlin*, 99 F.3d 550, 555 (2d Cir.1996).[11]

The evidence at issue was not needlessly cumulative, but, if believed, it easily might

8. Baccarat suggests on appeal that Watts wanted salespersons who were "young and sexy" regardless of whether they were male or female. We need not decide whether, if true, this fact would be fatal to a hostile work environment claim, *cf. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998) (plaintiffs "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] ... because of ... sex'") (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis and alteration added in *Oncale*), because a reasonable factfinder could infer that Watts's comments referred to women only. Leopold simply testified that Watts hired men after she was fired, and that she "d[id]n't know" whether Watts's "young and sexy" comments referred to both women and men.

9. The other comments by Watts, to the extent they are significant at all, only strengthen our conclusion.

10. The rule provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 Fed.R.Evid. 403.

11. Leopold maintains that the district court's decision in this case is not entitled to the usual deference because the court did not "properly exercise its discretion." Of course, the district court was not required to articulate the relevant considerations on the record; a simple "sustained" or "overruled" will ordinarily suffice. Our scrutiny of such an evidentiary ruling might be altered in the rare

have created feelings of antagonism and even disgust toward Leopold, which in turn might have unfairly prejudiced Leopold by providing jurors with a reason, unrelated to the merits of the case, to return a verdict against her. *Cf. United States v. Harvey,* 991 F.2d 981, 996 (2d Cir.1993) (admission of graphic descriptions of X-rated videotapes found in defendant's home "resulted in overwhelming prejudice against him"); 2 *Weinstein's Federal Evidence* § 403.04[1][b], at 403–36 (2d ed. 1998) ("Unfairness may be found in any form of evidence that may cause a jury to base its decision on something other than the established propositions in the case."). However, the evidence also had substantial probative value. As discussed above, Watts testified at trial that he had recommended termination of Leopold's employment because of her insubordination and her chronic conflicts with other store personnel. In deciding whether or not to believe that such difficulties were severe enough to form the basis for Watts's recommendation, the jury might have been strongly influenced by the evidence of Leopold's comments, of which Watts was—according to his testimony—personally aware.

We agree with Leopold that the evidence of the comments is rendered less probative by the fact that many were made—if at all—months or years before she was fired, and by the fact that they did not result in disciplinary action against her or even a notation in her personnel file. Although these factors make it unlikely that Baccarat could have pointed convinc-

ingly to the comments themselves as a basis for termination, the comments significantly enhanced the credibility of Watts's assertion that Leopold was terminated not due to her age, but rather because her actions toward others no longer could be tolerated. Because the credibility of that assertion was the central, if not the dispositive, issue on the age discrimination claim, *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (disbelief of defendant's proffered reasons for employment action, together with elements of prima facie case, may suffice to show ultimate fact of intentional discrimination); *accord Fisher v. Vassar College,* 114 F.3d 1332, 1338 (2d Cir.1997) (in banc), we cannot agree with Leopold that the evidence at issue had no more than minimal probative value.[12]

As noted above, the district court was required to determine whether this probative value was substantially outweighed by the danger of unfair prejudice from admission of the evidence at issue. Because both the probative value of the evidence and the danger of unfair prejudice were significant but neither was overwhelming, we conclude that the district court did not abuse its discretion by denying Leopold's motion *in limine* to exclude that evidence.

 Finally, Leopold challenges the district court's exclusion of her proffered testimony that other employees in their 60s had been fired by Baccarat.[13] In his offer of proof, Leopold's attorney stated:

> My client will testify that there were a series of terminations ... within a couple of years of people who reached ...

case where the record affirmatively reflects the trial court's failure to exercise its discretion properly. *See United States v. Borello,* 766 F.2d 46, 59 & n. 22 (2d Cir.1985) ("the court's remarks" suggested that it had not made the careful assessment required by Rule 403). In this case, however, such failure is not demonstrated by the mere fact that the court ruled on the objection immediately after remarking on the probative value of the evidence at issue.

12. We emphasize that the comments have probative value only with respect to Leopold's

age discrimination claim. Because retrial will be limited to the hostile work environment claim, the comments will have no relevance to material issues in those proceedings.

13. Although not raised as a separate issue on appeal, Leopold also argues that the district court abused its discretion by excluding testimony concerning comments by Watts that he was a Nazi and that he admired Nazis. According to Leopold, this evidence is relevant to her hostile work environment claim because the comments express Watts's identification with, and admiration for, a

their early 60s, and that people as they reached the early 60s were terminated. No one ever got to 65 in that place. There is a pattern and practice, among other things.

In excluding this evidence, the district court reasoned:

[W]ithout some evidence to indicate the reason for the termination, the mere fact that people that age were terminated, absent a rather elaborate statistical analysis, would not be admissible.

Leopold does not now dispute that she lacks personal knowledge, and therefore could not properly have been allowed to testify, concerning the circumstances of these terminations other than the ages of the employees involved. *See* Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Instead, Leopold argues that even without any statistical analysis, her testimony would have demonstrated that employees were "routinely" terminated when they reached their 50s and early 60s. The fact that certain individuals in this age group were terminated, however, does not demonstrate that such terminations were "routine" in the absence of, at the very least, contextual facts concerning the number of employees, if any, who were terminated at a younger age or who reached their 60s without being fired. Leopold's offer of proof to the district court provided no indication that Leopold could testify to such contextual facts, much less that those facts might support a finding of "routine" termination. Accordingly, the district court did not abuse its discretion by excluding Leopold's testimony in this area.

## IV.

To summarize: For the reasons stated above,

(1) we conclude that the evidence presented in Leopold's case-in-chief was sufficient to permit a reasonable finding of a hostile work environment, and we therefore

VACATE the district court's judgment to the extent that it incorporates the grant of judgment as a matter of law and REMAND for a new trial on the hostile work environment claim under Title VII and the NYHRL; and

(2) we conclude that neither of the evidentiary rulings challenged by Leopold on appeal was an abuse of discretion, and we therefore AFFIRM the district court's judgment to the extent that it incorporates the jury verdict on the age discrimination claim under the ADEA and the NYHRL.

group assertedly espousing antifeminist views. Because we are remanding the case for a new trial on the hostile work environment claim, our review of the district court's exclusion of the evidence does not affect the disposition of this appeal. Nevertheless, in the interest of judicial economy, we note our view that it was not an abuse of discretion for the district court to conclude that the danger of unfair prejudice from the comments outweighs their probative value to an extent sufficient to warrant exclusion.