**Mario BIRCH, Plaintiff,**

v.

**JP MORGAN CHASE & CO. and Chase Bank, Defendants.**

No. 07–cv–2152 (ADS)(ETB).

United States District Court, E.D. New York.

Feb. 23, 2010.

Stewart Law Firm, LLP by Charmaine M. Stewart, Esq., Nadira S. Stewart, Esq., of Counsel, Rosedale, NY, for plaintiff.

J.P. Morgan Chase Legal Department by Frederic L. Lieberman, Esq., of Counsel, New York, NY, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Plaintiff Mario Birch, a former branch manager for defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "Chase"), brought the present action on grounds that he was terminated by Chase based on his race and national origin, and in retaliation for his attempt to prevent discrimination of a disabled person. Birch also alleged that Chase defamed him through its internal reports that portrayed him in a negative light. Chase has now moved for summary judgment on all claims, and for the reasons set forth below, the Court grants this motion in its entirety.

## I. BACKGROUND

Plaintiff Mario Birch is a Kingston, Jamaica-born man of African and Asian ethnicity. In December 2006, Chase hired Birch to manage a retail bank branch that was located at 127 East Merrick Road, Valley Stream, New York (the "East Merrick Road Branch"). Chase had recently acquired this branch as part of a transaction in which it acquired more than 300 retail banking branches that were formerly owned by the Bank of New York. Birch did not previously work for Chase or Bank of New York. Prior to being hired by Chase, Birch was an acting branch manager at North Fork Bank.

When Birch began working at the East Merrick Road branch in December 2006, Chase was transitionally operating the branch to appear in some respects as if it were still run by Bank of New York. On April 5, 2007, the East Merrick Road Branch made the final official change to operate under the Chase brand, and held a celebration to commemorate the event. On that day, apparently due to one or more verbal altercations between branch employee Stanley Carrenard and Birch, Carrenard filed a written complaint with Chase against Birch. Sometime later that month, Carrenard also spoke with Birch's manager, Cary Giacalone, concerning his complaint. Carrenard essentially complained that Birch had treated him aggressively and unfairly. Giacalone determined that the complaint merited action, so he asked Nancy Panetta, a Human Resources Business Partner, to conduct a "climate study" at the East Merrick Road Branch to evaluate Birch's management of the branch. According to Panetta, a climate study is a "phone or on-site visit" by a human resources representative to a branch where there have been complaints of "dissatisfaction in the work area, unfair management practices, or issues that may be perceived as discriminatory, etc." (Panetta Decl., ¶ 4.) The human resource representative performing a climate study then prepares a written report of his or her observations.

Pursuant to Giacalone's request, Panetta visited the East Merrick Road Branch on the morning of May 7, 2007 to observe the branch. Panetta stayed for approximately four hours, and while there, interviewed the five of the six employees present at the branch that day. The only employee present that she failed to interview was Birch. Panetta then drafted a report based on this climate study, detailing multiple staff complaints about Birch, including grievances that he humiliated employees and had a "verbally abusive and intimidating management style." Panetta recommended that Birch be terminated. ("Climate Study", Panetta Decl., Ex. 10 at 2.)

Managers at Chase reviewed Panetta's report, and on May 10, 2007, Panetta and Giacalone met with Birch and informed him that he would be suspended with pay. Birch became upset, and the next day, May 11, 2007, Giacalone informed Birch that his employment with Chase was terminated.

During April 2007, another set of events occurred that are also relevant to the present case. These events involved an employee at the East Merrick Branch, Matthew Robles, whom both parties agree has a disability within the meaning of the applicable federal, state, and local law. Prior to the acquisition of the Bank of New York branches by Chase, Robles had worked for Bank of New York as a "Personal Banking Representative". When Chase purchased the Bank of New York branches, it generally gave Bank of New York employees job titles and responsibilities that were analogous to those they had had with the Bank of New York. However, Chase did not have a direct analogue to Robles's former

job as a Personal Banking Representative, so employees with this title at Bank of New York were "job mapped" into one of two jobs: "Personal Banker" or "Sales and Service Associate." The Personal Banker position was essentially the higher-level position, requiring a college degree and certain securities industry licenses. The Sales and Service Associate job did not require either a college degree or any licensing. To be assigned as a Personal Banker rather than a Sales and Service Associate, a former Personal Banking Representative needed the recommendation of his branch manager, and then was required to pass an exam that Chase administered.

At some point in April 2007, Birch recommended that Robles be given a job as a Personal Banker. The parties dispute whether Birch's manager, Giacalone, initially disagreed with Birch's recommendation, but Robles was eventually allowed to take the Personal Banker exam later in the month. Robles did not pass the exam, and was given a job as a Sales and Service Associate.

On May 25, 2007, Birch commenced the present case, alleging that Chase terminated his employment in whole or in part on the basis of his race and national origin, in violation of 42 U.S.C. § 1981, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the New York Human Rights law. Birch also asserts a defamation claim, in that Chase published false statements that he had "created a hostile work environment within his branch." (Compl., ¶ 85; Am. Compl., ¶ 98.) On March 19, 2008, after exhausting administrative remedies, the plaintiff amended his complaint on consent to allege an additional claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the New York Human Rights law. Specifically, Birch alleged that Chase terminated his employment in whole or in part in retaliation for his support for giving Matthew Robles a job as a Personal Banker.

Chase now moves for summary judgment on all of the plaintiff's claims. The plaintiff opposes this motion, though he does not address the libel claim in his opposition papers. For the reasons set forth below, the Court grants Chase's motion in its entirety.

## II. DISCUSSION

### A. Summary Judgment Standard

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that

there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. As to the Plaintiff's Title VII and Section 1981 Causes of Action

■ The plaintiff has asserted discrimination claims on the basis of race and national origin under Title VII and Section 1981. Both of these claims are analyzed under the same standards. To succeed on a claim of employment discrimination, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To do this, the plaintiff must show that "(1) [he] was within the protected class; (2)[he] was qualified for the position; (3)[he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell University*, 584 F.3d 487, 498 (2d Cir.2009); *see also Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). With regard to the fourth prong of this test, the Second Circuit has held that an inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by the plaintiff that "[he] was subjected to disparate treatment ... [compared to persons] similarly situated in all material respects to ...

[himself]." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000) (internal quotations and citations omitted).

Here, the parties agree that the plaintiff can satisfy the first three prongs of the prima facie case for discrimination. However, Chase argues that the plaintiff cannot show that his termination "occurred under circumstances giving rise to an inference of discrimination." The Court agrees.

In attempting to show there are genuine issues of fact with respect to this fourth prong, the plaintiff does not present any direct evidence of discriminatory intent. Rather, the plaintiff relies solely on a claim that similarly situated branch managers not of his ethnic and national background were disciplined more leniently than he was. Specifically, the plaintiff compares his treatment to that of two other Chase branch managers, Isemely Medina, a Latina woman, and Thoa Ligentile, an Asian woman.

To show that Medina was similarly situated to him, the plaintiff relies solely on the testimony of Cary Giacalone, his former manager. Giacalone testified that Medina worked as a branch manager for Chase in Queens, New York starting in 2007. According to Giacalone, Medina was at some point presented with a "written development plan" concerning her need to improve her management skills. At that time, Medina continued to work for Chase. The plaintiff asserts that Medina was given the written development plan after Chase performed a climate study at Medina's branch, though he offers no evidence to support this conclusion. Even assuming a climate study was performed at Medina's branch, the plaintiff provides no evidence as to the reason for the climate study or the climate study's conclusions.

With regard to Ligentile, the plaintiff relies solely on the testimony of Julie Ginsburg, a Vice President, Human Resources Manager for Chase. Ginsburg testified that Chase performed a "climate study" at Ligentile's branch—that is, Chase observed her branch to evaluate her performance—and then transferred her to another branch, where she has been more successful. There is no evidence of when the climate study took place, why it was undertaken, or what conclusions were drawn from it.

Generally, the plaintiff's burden in establishing a prima facie case of discrimination under Title VII is "minimal." *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000). It is also generally a "question of fact for the jury" as to whether a person is similarly situated to the plaintiff in a discrimination case. *Graham*, 230 F.3d at 39. Nevertheless, the Second Circuit has held that to establish a prima facie case of employment discrimination based on disparate treatment, the plaintiff must be able to show that "the conduct [of the putative comparator] for which the employer imposed discipline was of comparable seriousness." *Id.* at 40 (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir.1999)). In addition, there must be a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Id.*

Even taking all of the evidence in the best light for the plaintiff, the Court finds that no reasonable jury could find that the plaintiff has met his evidentiary burden in establishing a prima facie case with regard to showing circumstances that give rise to an inference of racial discrimination. The plaintiff has presented no evidence that either Medina or Ligentile engaged in behavior comparable to the conduct Carrenard complained about, or comparable to the conduct that was reported in Panetta's climate study. In fact, the plaintiff has adduced no evidence as to the basic nature of the conduct that precipitated the disciplinary actions taken against Medina and Ligentile. Finding that the plaintiff has totally failed to establish any circumstances leading to an inference of racial discrimination, the court grants summary judgment in the defendant's favor dismissing the plaintiff's Section 1981 and Title VII claims.

## C. As to the Plaintiff's Retaliation Claim

The plaintiff also alleges that Chase terminated his employment in retaliation for his opposition to Chase's failure to place Matthew Robles, a disabled person, in a position as a Personal Banker. Chase asserts that it neither discriminated against Robles, nor did it terminate the plaintiff for his opposition to discrimination.

To establish a prima facie case for employment retaliation, the plaintiff must establish that (1) he "engaged in protected activity" (2) that Chase "was aware of this activity" (3) that Chase "took adverse action against him," and (4) "a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 177 (2d Cir.2006) (internal quotations and citations omitted). Generally, opposing discriminatory conduct against a disabled person is protected activity.

As a preliminary matter, the Court is doubtful that the plaintiff has adduced sufficient evidence to show he engaged in any protected activity. There is little if any evidence beyond Birch's own claims that shows that Birch believed Chase was discriminating against Robles based on his disability. There is similarly a dearth of

evidence that Birch communicated an opposition to such alleged discrimination to any superior at Chase. Rather, the evidence only reveals that Birch supported Robles as a candidate for the Personal Banker job—presumably based on his qualifications. Moreover, the parties agree that Chase then *permitted* Robles to take the Personal Banker exam, and that Robles failed the exam.

Nevertheless, even assuming that the plaintiff did engage in protected activity with regard to Robles, the Court finds that the plaintiff has not established any causal connection between the protected activity and his termination. There is no direct evidence that Birch's support of Robles' application to be a Personal Banker played any role in Birch's termination. Similarly, the barely-sketched experiences of Birch's putative comparators, Medina and Ligentile, also offer no indication of causation. The only remaining evidence of causation is that the plaintiff was terminated shortly after supporting Robles for the Personal Banker position. Particularly in light of the surrounding evidence—including that Robles was permitted to take the Personal Banking exam and failed it—the Court finds that this proximity alone is insufficient to establish a prima facie case of discrimination as a matter of law. Therefore, the plaintiff's retaliation claim is also dismissed.

### D. As to the Plaintiff's Claims Pursuant to the New York Human Rights Law

The Court analyzes the plaintiff's New York State Human Rights Law claims under the same rubric used to analyze to the plaintiff's analogous federal law claims for discrimination and retaliation. *See, e.g., Leopold v. Baccarat, Inc.,* 174 F.3d 261, 264, n. 1 (2d Cir.1999); *Schiano v. Quality Payroll Systems, Inc.,* 445 F.3d 597, 609

(2d Cir.2006); *Davis v. Oyster Bay–East,* No. 03–CV–1372, 2006 WL 657038, at *8, n. 12 (E.D.N.Y. Mar. 9, 2006), *aff'd,* 220 Fed.Appx. 59 (2d Cir.2007). As the Court has dismissed each of the relevant federal claims, the Court also dismisses the plaintiff's claims under the New York State Human Rights Law. E. As to the Plaintiff's Cause of Action for Defamation

■ The plaintiff alleges that Chase either negligently, recklessly, or knowingly "published false allegations that detrimentally affected Plaintiff's professional reputation." (Am. Compl., ¶¶ 97, 99.) Specifically, the plaintiff alleges that Chase made false statements that the plaintiff "had created a hostile work environment within his branch." (Am. Comp., ¶ 98.) The plaintiff identifies no other statements in connection with this cause of action, nor does the plaintiff identify in what manner these statements were made, or to whom they were made. The plaintiff has also not named a cause of action in connection with these allegations, though the Court interprets the pleading to be an attempt to state a cause of action for defamation. Chase has moved for summary judgment on this claim, and the plaintiff does not address the issue in his opposing papers.

Under New York law, the elements of defamation are "a false statement, published without privilege or authorization to a third party, constituting fault ... and it must either cause special harm or constitute defamation per se." *Peters v. Baldwin Union Free School Dist.,* 320 F.3d 164, 169 (2d Cir.2003) (internal quotations omitted). Persons are afforded a qualified immunity from a defamation suit when the offending communication was made "by supervisors or co-workers ... in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's dis-

charge." *Albert v. Loksen,* 239 F.3d 256, 272 (2d Cir.2001). However, this privilege does not apply when the statement in question was made with malice. *Id.*

Here, the only allegedly defamatory statements that Chase made regarding the plaintiff were made in connection with evaluation of the plaintiff's work. As such, these statements are privileged. In addition, the plaintiff has presented no evidence to support a finding that the statements were made with malice. Therefore, the Court dismisses the plaintiff's cause of action based on defamation.

### E. As to Additional Claims by the Plaintiff

The plaintiff does not name any additional causes of action among the enumerated "Causes of Action" asserted in his Amended Complaint. Nevertheless, the second paragraph of the plaintiff's amended complaint names causes of action for "negligence, malicious prosecution, fraud, and breach of contract." To the extent the plaintiff is asserting these causes of action, the Court notes that the plaintiff does not address any of these causes of action in his opposition to Chase's motion for summary judgment. Moreover, the Court finds that the plaintiff has not presented any evidence that raises a triable issue of fact with regard to any of these causes of action. Therefore, the Court dismisses all of these claims to the extent they are asserted.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendant's motion for summary judgment is granted in its entirety; and it is further

**ORDERED** that all of the causes of action asserted in the plaintiff's complaint are dismissed; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.