Cory CHAVIS, Plaintiff,

v.

WAL–MART STORES, INC., Wal–Mart Stores East, LP, Defendants.

15 Civ. 4288 (DC)

United States District Court,
S.D. New York.

Signed July 18, 2017

G. Oliver Koppell, Esq., Daniel Schreck, Esq., Law Offices of G. Oliver Koppell & Associates, P.C., 99 Park Avenue, Suite 1100, New York, New York 10016

Pamela J. Moore, Esq., Sami Asaad, Esq., McCarter & English, LLP, City Place I, 185 Asylum Street, 36th Fl., Hartford, Connecticut 06103

## OPINION

CHIN, Circuit Judge:

In 2013, plaintiff Cory Chavis, an Asset Protection Manager at the Walmart store in Suffern, New York, requested a religious accommodation permitting her not to work on Sundays so she could observe the Sabbath. She brought this action against defendants Wal–Mart Stores, Inc. and Wal–Mart Stores East, LP (together, "Walmart") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), seeking damages and alleging that Walmart employees unlawfully harassed her and discriminated against her on the basis of her religion and retaliated against her for pressing her accommodation request. Defendants move for summary judgment to dismiss the complaint in its entirety. Because genuine issues of material fact preclude the entry of summary judgment on certain of Chavis's

claims, defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are summarized from the evidentiary record and are construed in the light most favorable to Chavis, the party opposing summary judgment.

Chavis works for Walmart as the Asset Protection Manager ("APM") of the Suffern, New York store. ECF 67, Consol. Stmt. of Mat. Facts ("Consol. Stmt.") ¶ 1. She has worked for Walmart since 1994 and has been an APM at the Suffern store since 2006. *Id.* Chavis is a member of the Apostolic Pentecostal Church and observes the Sabbath on Sundays by, among other things, refraining from work. *Id.* ¶¶ 47–50.

For approximately six years in the APM position, Chavis was able to arrange her schedule to avoid work on Sundays. In March 2013, however, Walmart changed its policy to require APMs to work every third Sunday. *Id.* ¶¶ 53, 142. Chavis requested an accommodation not to work on Sunday due to her religious observance. *Id.* ¶ 54. The request was not granted, and Chavis was told that she could either use vacation days to avoid working on Sundays or find another position that did not require any Sunday work. *Id.* ¶ 55. For nearly six months, Chavis used her vacation days to avoid working Sundays. *Id.* ¶¶ 55, 143, 148. After additional supervisors failed to grant her request, Chavis appealed to Walmart's "Open Door" hotline. *Id.* ¶¶ 144–47. In September 2013, Walmart exempted her from Sunday work and restored the vacation days she had used in the prior six months. *Id.* ¶¶ 147–48; ECF 60, Koppell Decl. Exs. 1, 2 ("Chavis Dep.") at 88–89.

Subsequently, a number of interactions took place between Chavis and her superiors, which Chavis describes as discrimination and harassment in retaliation for her accommodation request, and which Walmart claims were routine actions that had no adverse effect on Chavis's employment. *See generally* ECF 58, Pl.'s Opp. at 6–10. In addition, Chavis applied seventeen times to various positions between March 2013 and the filing of the instant lawsuit. ECF 47, Assad Decl. Ex. H. She was denied each promotion and interviewed for only one. Cons. Stmt. ¶¶ 185–88.

Chavis filed this suit in June 2015, claiming that Walmart discriminated and retaliated against her in violation of Title VII and NYSHRL by, among other things, denying her promotions while promoting others who were not Sunday Sabbath observers, imposing unwarranted discipline, and subjecting her to unwarranted surveillance, investigation, and other harassment sufficient to alter the terms and conditions of her work environment. *See* ECF 1, Compl. at 12–14. After the completion of discovery, defendants moved for summary judgment, principally on the ground that Chavis cannot establish a prima facie case of discrimination for any of her claims. *See* ECF 45, Defs.' Mem. at 1. Chavis opposed the motion, and defendants moved to strike portions of Chavis's declaration and counter-statement of material facts as contradictory to her deposition testimony, lacking personal knowledge, and based on hearsay or other inadmissible evidence. ECF 66, Defs.' Mot. to Strike. After oral argument on June 19, 2017, I denied defendants' motion to strike except as to paragraph 6 of Chavis's declaration, which was stricken as inadmissible hearsay. *See* Minute Entry dated 6/19/2017.

## DISCUSSION

Chavis alleges that Walmart discriminated against her on the basis of religion in violation of Title VII by failing to accommodate her religious observance for a six-month period in 2013, creating a hostile

work environment, and failing to promote her on seventeen separate occasions. She also contends that Walmart retaliated against her because of her accommodation request. After discussing the applicable legal standard, I address each claim in turn.

## I. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also SCR Joint Venture L.P, v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture,* 559 F.3d at 137 (quoting *Roe v. City of Waterbury,* 542 F.3d 31, 35 (2d Cir. 2008)). "A court reviewing a motion for summary judgment must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Beyer v. Cty. of Nassau,* 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Dall. Aerospace, Inc, v, CIS Air Corp.,* 352 F.3d 775, 780 (2d Cir. 2003)).

██ Title VII prohibits "discriminat[ion] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1). Chavis's Title VII and NYSHRL discrimination claims are governed by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Tolbert v. Smith,* 790 F.3d 427, 434 (2d Cir. 2015). New York courts "require the same standard of proof for claims brought under the NYSHRL as for

those brought under Title VII." *Leopold v. Baccarat, Inc.,* 174 F.3d 261, 264 n. 1 (2d Cir. 1999). Accordingly, my conclusions regarding Chavis's Title VII claims for retaliation, hostile work environment, and discriminatory failure to accommodate and promote apply with equal force to her analogous NYSHRL claims.

## II. Failure to Accommodate

Chavis claims that Walmart failed to accommodate her Sabbath observance for the six-month period from April to September 2013, in violation of Title VII. Pl.'s Opp. 29–30. She argues that, during this period, Walmart disciplined her by "forc[ing her] to use her vacation days to avoid working on Sundays." ECF 59, Pl.'s 56.1 Stmt. ¶ 56. Walmart argues in response that Chavis's use of vacation days does not constitute disciplinary action, and she was not disciplined in any other way for not working Sundays. ECF 63, Defs.' Reply at 3.

### A. Applicable Law

██ "It is an unlawful employment practice ... for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Baker v. The Home Depot,* 445 F.3d 541, 546 (2d Cir. 2006) (citation and internal quotation marks omitted). To establish a failure-to-accommodate claim under Title VII, a plaintiff must first prove a prima facie case of religious discrimination: namely, that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Philbrook v. Ansonia Bd. of Educ.,* 757 F.2d 476, 481 (2d Cir. 1985) (citation omitted).

Once a plaintiff establishes a prima facie case of religious discrimination, the inquiry turns to whether the employer complied with the statutory requirement to offer the plaintiff a "reasonable accommodation" for his or her religious belief, "unless doing so would cause the employer to suffer an undue hardship." *Baker*, 445 F.3d at 546 (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002)).

## B. Application

The parties do not dispute that Chavis has a bona fide religious belief that conflicted with an employment requirement or that she informed Walmart of this belief. Cons. Stmt. ¶¶ 47–54, 57. Because Chavis was not disciplined for failing to comply with the requirement to work every third Sunday, however, she cannot establish a prima facie case of religious discrimination and her failure to accommodate claim therefore fails.

As an initial matter, Chavis did in fact comply with Walmart's requirement by availing herself of the option to use her vacation days on the Sundays that she was required to work. Cons. Stmt. ¶¶ 55–56. Although, according to Chavis, she was told that she could either use her vacation days or find another position that did not require Sunday work, at no point did Wal-

mart discipline Chavis for taking vacation days every third Sunday. Chavis Dep. at 92.

Chavis argues instead that Walmart forced her to use vacation days to avoid working on Sundays, which constituted "discipline." This argument fails as a matter of law because requiring an employee to use vacation days to avoid work conflicting with the employee's religious observance does not constitute an adverse employment action.[1]

Although the Second Circuit has not defined what constitutes "discipline" in the context of a religious discrimination claim based on an employer's failure to accommodate, district courts in the circuit have equated discipline with an adverse employment action. *See St. Juste v. Metro Plus Health Plan*, 8 F.Supp.3d 287, 316 (E.D.N.Y. 2014); *Siddiqi v. N.Y. City Health & Hosps. Corp.*, 572 F.Supp.2d 353, 370 (S.D.N.Y. 2008).[2] An adverse employment action is a "materially adverse change in the terms and conditions of employment," such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006).

---

1. To the extent that Chavis alleges that she was harassed in response to her taking vacation days to observe the Sabbath, *see* Cons. Stmt. ¶ 56, I conclude that no reasonable jury could find, on this record, that she was harassed to an extent that there was an adverse employment action.

2. The Second Circuit has not expressly addressed what constitutes "discipline" for purposes of a failure-to-accommodate claim in a precedential opinion. In two summary orders, however, the Circuit concluded that the plaintiffs failed to establish a prima facie case of failure to accommodate where the plaintiffs did not offer evidence sufficient to establish that they suffered adverse employment ac-

tions. *See Marmulszteyn v. Napolitano*, 523 Fed.Appx. 13, 14 (2d Cir. 2013) (summary order) ("[W]e agree with the District Court that [the plaintiff] failed to establish a *prima facie* case for his failure-to-accommodate claim because no evidence suggests that he suffered an adverse employment action."); *Leifer v. N.Y. State Div. of Parole*, 391 Fed. Appx. 32, 33 (2d Cir. 2010) (summary order) ("[W]e agree with the district court that [the plaintiff's] claim of discrimination based upon defendants' failure to accommodate his religious practices fails because there is insufficient evidence showing that [he] suffered an adverse employment action.").

In a typical failure-to-accommodate case, a plaintiff is disciplined by her employer after she fails to comply with an employment requirement due to her religious belief. Here, Chavis was not disciplined and did not suffer an adverse employment action between April and September 2013 as a result of her religious conflict; as noted above, she complied with her job requirements and experienced no demotion or alteration of job responsibilities as a result of her use of vacation days to avoid Sunday work.

The fact that Chavis needed to use vacation days to avoid a religious conflict is not an adverse employment action because she "was not deprived of a material benefit, [but] simply chose to use the benefit in a particular way." *O'Neill v. City of Bridgeport Police Dep't*, 719 F.Supp.2d 219, 226 (D. Conn. 2010) (holding that the plaintiff did not suffer an adverse employment action by needing to use vacation days to accommodate his religious beliefs); *accord St. Juste*, 8 F.Supp.3d at 316 (collecting district court cases holding the same). Furthermore, as the result of Chavis's appeals to the Open Door hotline, she was ultimately exempted from working Sundays without having to use her vacation days, and the vacation days she used in the preceding six months were restored.

Finally, even if Chavis could establish a prima facie case of discrimination, it was not unreasonable for Walmart to require her to use vacation days as a religious accommodation. An employer's accommodation offer is reasonable where it "eliminate[s] the conflict between the employment requirement and the religious practice." *Baker*, 445 F.3d at 548 (citation omitted). The Second Circuit has noted that a proposed accommodation may be unreasonable "if it cause[s] [an employee] to suffer an inexplicable diminution in his employee status or benefits," but that "employees are not entitled to hold out for the most beneficial accommodation." *Id.* (citation omitted).

Chavis's ability to use her vacation time to observe the Sabbath eliminated the conflict with the requirement that she work every third Sunday. Title VII requires only that Walmart offer a reasonable accommodation, not necessarily the one that Chavis seeks. *Durant v. Nynex*, 101 F.Supp.2d 227, 234 (S.D.N.Y. 2000) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986)). By using her vacation days, Chavis was able to observe the Sabbath and was required only to use a workplace benefit for its intended purpose—time off from work. *Cf. Ansonia Bd. of Educ.*, 479 U.S. at 70, 107 S.Ct. 367 (holding that allowing an employee to take unpaid leave is typically a reasonable accommodation). By allowing Chavis to use her vacation time every third Sunday, Walmart *was* accommodating her, and in the end Walmart even returned the vacation days she had use for these purposes. Although "[o]rdinarily, questions of reasonableness are best left to the fact finder," *Baker*, 445 F.3d at 548, Chavis offers no argument in favor of finding the accommodation unreasonable.

Accordingly, I find Walmart's interim accommodation reasonable as a matter of law. *See Durant*, 101 F.Supp.2d at 234; *Guy v. MTA N.Y. City Transit*, No. 10 CV 1998, 2012 WL 4472112, at *8 (E.D.N.Y. Aug. 6, 2012), *report and recommendation adopted*, No. 10-CV-01998, 2012 WL 4472098 (E.D.N.Y. Sept. 26, 2012); *see also O'Neill*, 719 F.Supp.2d at 227 ("It is not unreasonable for an employer to require an employee to use his vacation days as part of a religious accommodation."). Chavis's failure-to-accommodate claim is therefore dismissed. *See Ansonia Bd. of Educ.*, 479 U.S. at 68, 107 S.Ct. 367

("[W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end.").

## III. Hostile Work Environment

Chavis next claims that she was subject to a hostile work environment—through unwarranted searches, discipline, and condescending remarks—after she requested and received a religious accommodation. Pl.'s Opp. at 29. Walmart argues that the complained-of conduct is insufficiently severe or pervasive to constitute a hostile work environment. Defs.' Reply at 10.

### A. Applicable Law

 To establish a claim for a hostile work environment in violation of Title VII, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citation omitted). "The severe or pervasive standard has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010) (citation and internal quotation marks omitted).

 Courts review the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*McGullam*, 609 F.3d at 79 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367). The plaintiff must establish that the relevant conduct occurred because of the plaintiff's religion, as well as that the plaintiff's employer was responsible for the discriminatory conduct. *See Gregory v. Daly*, 243 F.3d 687, 692 & n. 3 (2d Cir. 2001).

### B. Application

 On the evidence in the record, viewed in the light most favorable to Chavis, no reasonable jury could conclude that the alleged discriminatory conduct was (1) sufficiently severe or pervasive to alter the conditions of her employment or (2) the result of her religious beliefs.

Notwithstanding Chavis's subjective perception, the conduct alleged was not severe or pervasive enough to create an objectively hostile or abusive work environment. In support of her claim, Chavis alleges that she was subject to increased review and surveillance, a single unwarranted disciplinary coaching, the disclosure of her accommodation to other store employees, a comment by Sherry Savage, the Market Asset Protection Manager ("MAPM") for the Suffern store, in front of other employees that Savage would need to grant Chavis an exception from the dress code to continue wearing skirts, and a comment by John Flowers, the Regional Asset Protection Manager ("RAPM") who oversaw Savage, describing Chavis as "the fuel that feeds the fire." *See generally* Pl.'s Opp. at 9–10. The complained-of conduct was not frequent—Chavis cites several visits by supervisors to the Suffern store from November 2013 to October 2014, two isolated comments from Flowers and Savage, and a single disciplinary report that, according to Chavis, had no impact on her employment

and expired after one year.[3] While Chavis felt humiliated by Savage's reference to her attire, that isolated incident does not rise to level of severity needed to sustain a hostile work environment claim. *See Petrosino v. Bell Atl.,* 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."). Taken together, the conduct alleged was not "sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris,* 510 U.S. at 21, 114 S.Ct. 367.

Furthermore, there is no evidence from which a jury could infer that the purportedly harassing conduct was related to Chavis's religion. Accepting as true Chavis's version of events, the conduct described appears facially neutral. Judith O'Gara, the Suffern store's other APM, was subject to the same increased surveillance and coaching that Chavis was. *See* Chavis Dep. at 32–38. Savage's comment about Chavis's clothing could be read to reflect some religious insensitivity; as discussed above, however, this isolated incident is insufficiently severe or pervasive to constitute a hostile work environment. Similarly, while the comment that Chavis was "the fuel that feeds the fire" could reflect some animosity towards Chavis, there is nothing in that statement from which a jury could infer that it was made because of Chavis's religious beliefs. While, as discussed further below, the record evidence supports an inference of retaliatory animus, no rational jury could conclude that the hostile comments and surveillance that Chavis faced were related to her religion.

---

**3.** Chavis also testified that the harassment stopped around September 2014, when she filed a complaint with the Equal Employment

## IV. Failure to Promote

Next, Chavis complains that Walmart discriminated against her on the basis of religion by denying her seventeen applications to various internal positions between April 2013, when she initially requested a religious accommodation, and June 2015, when she filed the complaint in this action. Pl.'s Opp. at 12. Walmart contends that for each position, Chavis was either unqualified or not similarly situated to the successful applicants. Defs.' Mem. at 11.

The record shows that, during this period, Chavis applied for six Market Asset Protection Manager ("MAPM") positions in six locations (Valley Stream, Mohegan Lake, Watchung, Flanders, Hartford, and New Haven), an Assistant Store Manager ("ASM") position in Suffern, a co-manager position in Kingston, and six times to two market supply positions in separate regions. ECF 47, Asaad Decl. Ex. H. Chavis appears to have applied twice to two of the MAPM positions and the ASM position, bringing the total number of applications to seventeen. *Id.*

### A. Applicable Law

The plaintiff must first establish a prima facie case of discriminatory failure to promote by showing that: (1) she is a member of a protected class; (2) she is qualified for the position sought; (3) she was denied the position; and (4) the circumstances of the denial give rise to an inference of discrimination. *Howley v. Town of Stratford,* 217 F.3d 141, 150 (2d Cir. 2000).

For the purposes of failure-to-promote claims, whether the plaintiff is qualified "refers to the criteria the employer has specified for the position." *Williams v.*

Opportunity Commission ("EEOC"). Chavis Dep. at 265–66.

*R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004) (citation omitted). As noted above, employers must offer reasonable accommodations for employees' religious practices, unless doing so would cause the employer to suffer an undue hardship. *Cosme*, 287 F.3d at 158.

 An inference of discrimination may be drawn from a showing that a similarly situated individual that is not in the plaintiff's protected class was more favorably treated than the plaintiff. *Hargett v. Nat'l Westminster Bank, USA*, 78 F.3d 836, 839 (2d Cir. 1996). To be deemed similarly situated, individuals must be similarly situated in all material respects. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). What constitutes "all material respects" varies from case to case but requires a "reasonably close resemblance of facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

 If the plaintiff establishes a prima facie case, and the employer presents a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to present evidence that the employer's reason for not hiring the plaintiff is mere pretext. *See Howley*, 217 F.3d at 150.

## B. Application

 In a discriminatory failure-to-promote case, "[e]ach instance of a failure to promote is considered a discrete act." *Jimenez v. City of New York*, 605 F.Supp.2d 485, 499 (S.D.N.Y. 2009). Accordingly, I consider whether Chavis has satisfied her burden to establish a prima facie case regarding each denied promotion in question.

### 1. Market Supply Positions

As a threshold matter, defendants argue that Chavis's promotion claims based on the six market supply positions must be dismissed because they were inappropriately raised for the first time in Chavis's opposition brief. *See* Defs.' Reply at 8 (citing *Beckman v. United States Postal Serv.*, 79 F.Supp.2d 394, 407 (S.D.N.Y. 2000)).

Although these claims were not included in the Complaint, they were raised during discovery. In the Complaint, Chavis described eight positions—none of which are market supply roles—to which she claimed she was denied promotion. Compl. ¶¶ 34, 50, 72, 82, 94. At Chavis's deposition, Chavis identified seventeen positions, read into the record by her counsel, as positions she applied to between April 2013 and the filing of her suit. Chavis Dep. at 158–61. She confirmed that the four categories of jobs she applied for were MAPM roles, market supply roles, an ASM role, and a co-manager role. *Id.* at 161. Furthermore, counsel for Walmart questioned Chavis about the successful candidates for the market supply roles, *id.* at 161–62, indicating defendants' awareness that Chavis was pursuing promotion claims based on positions not listed in the Complaint. Accordingly, the court is satisfied that Walmart was not surprised or prejudiced by Chavis's failure-to-promote claims relating to the market supply positions and will consider the claims on their merits.

Defendants further contend that, even if Chavis is allowed to assert these claims, she cannot establish a prima facie case based on the record evidence. I agree and grant defendants' motion as to the claims of failure to promote for the six market supply positions.

 Although Chavis alleges discriminatory behavior by the hiring managers for the MAPM, ASM and co-manager

roles, and provides evidence regarding her qualifications as compared to the successful candidates hired for those positions, she offers no facts to support her claims based on the market supply jobs. Chavis acknowledged in her deposition that, aside from the first name of the successful candidate for the market supply role in her region, she did not know who interviewed for the positions or who the successful candidates were. Chavis Dep. at 161–62. Chavis also offered no evidence regarding possible animus on the part of Andrew Holler, the hiring manager for those positions. Chavis merely argues that Walmart's failure to interview her for these jobs, considered together with the circumstances regarding Walmart's failure to promote her to *other* positions, establishes an overall pattern of discrimination that extends to the market supply positions.

The denial of seventeen promotion applications over the course of approximately two years is arguably probative of discriminatory motivation on Walmart's part. Without any information regarding the market supply positions themselves, however—such as the minimum qualifications, the other applicants, any successful candidates, or those involved in hiring for the position—Chavis cannot discharge her burden to establish a prima facie case of discrimination with regard to those positions. Accordingly, because no jury could infer from the record evidence that Chavis was qualified for the market supply roles, that there were circumstances leading to an inference of discriminatory motive, or that Walmart's reasons for choosing other candidates were pretext for discrimination, defendants' motion for summary judgment is granted as to the market supply promotion claims.

### 2. *MAPM Positions*

■ Eight of the remaining eleven applications at issue were for MAPM posi-

tions, a role involving direct supervision of APMs like Chavis. Defendants argue that Chavis cannot establish a prima facie case as to these positions, and that her claim nonetheless fails because there is no evidence that Walmart's explanations for its choice of candidates are pretextual.

Defendants first assert that Chavis is unqualified for the MAPM role because it requires Sunday work. Considering the evidence in the light most favorable to her, however, Chavis has raised a genuine issue of material fact regarding her qualifications. First, the MAPM job description does not mention a requirement to work on Sundays. Asaad Decl. Ex. J. Second, while defendants argue that MAPMs worked on Sundays "routinely" and "often," Defs.' Mem. at 3, 12, Savage testified that, during her 21 years as a MAPM, she did not generally work on Sundays and was required to do so only "several" times, usually for an emergency or other urgent situation, Koppell Decl. Ex. 4 ("Savage Dep.") at 88–89. Finally, Chavis has stated that she believes she would be allowed to work on Sunday in the event of emergency. Chavis Dec. ¶ 12; Chavis Dep. at 67–70.

Furthermore, Walmart's argument that it could not have reasonably accommodated Chavis's Sabbath observance in the MAPM position is not dispositive of her claims. According to Walmart, the distance between districts would make it unreasonably hard for a MAPM from a different district to cover for Chavis in the event that work arose on a Sunday. Const. Stmt. ¶¶ 30–35. As Chavis notes, however, there is no evidence of any analysis by Walmart at the time of her application regarding whether an accommodation would create undue hardship. Thus, given the disputed questions of whether Sunday work was in fact required for the MAPM position and,

if so, whether Chavis would be able to satisfy that requirement, the prospect of accommodating Chavis's religious beliefs in the MAPM role does not appear to be so unreasonable that no jury could find otherwise.

Walmart also argues that no inference of discrimination can be drawn from its failure to promote Chavis to MAPM because the successful candidates were not similarly situated to Chavis. Of the six MAPM positions for which Chavis· applied, four were filled by candidates who, at the time they were promoted, held positions ranked equal to or higher than MAPM. The other two positions were filled by current APMs like Chavis, but Walmart claims these candidates had experience Chavis lacked, including time spent as sole APMs of a single store (as opposed to co-APMs like Chavis and O'Gara) and,· in one case, a prior stint as acting MAPM.

With regard to the positions filled by lateral employees who formerly held MAPM or equivalent positions, Chavis has not brought forth evidence from which a jury could infer discrimination in the denial of her applications. The employment experience of those candidates ·forecloses the argument that they were similarly situated to Chavis "in all material respects." *Graham*, 230 F.3d at 39; *see also Gonzalez v. City of New York*, 354 F.Supp.2d 327, 335 (S.D.N.Y. 2005) (dismissing claims of failure to promote where plaintiffs could not demonstrate that employees promoted in their· place were less qualified than plaintiffs). ·

On the other hand, Chavis has·presented evidence based on which a jury could reasonably ·conclude that she was similarly situated to the APMs hired for the Flanders and Hartford MAPM positions. In addition to holding the same title as those candidates, Chavis had been working at Walmart for approximately 21 years at the time of her applications. She received "solid performance" grades on her evaluations and was awarded "Investigator of the Year" in 2015. ECF 57, Chavis Decl. ¶ 19. Moreover, Chavis was the sole APM of her store for six years prior to O'Gara's arrival. *Id.* ¶ 5.[4]

Chavis, who has been employed with Walmart since 1994 and was successfully promoted to the position of APM in 2006, has presented evidence to support her assertion that she had experience akin to that of the other APMs who were promoted to MAPM. Although Chavis' credentials were not "so superior to the credentials of the [selected MAPMs] that no reasonable person ... could have chosen the candidate selected over [her]," *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotations omitted), unlike the plaintiff in *Byrnie*, Chavis does not rely solely on the alleged discrepancy in· qualifications to raise an inference of discriminatory animus. Rather, she points to instances of allegedly discriminatory scrutiny and comments by her supervisors—one of whom, Flowers, was the MAPM hiring manager—following her notifying her supervisors about her inability to work on Sundays due to religious observance. She also cites Walmart's failure to interview her for all but one of the positions to which she applied after she disclosed her observance of the Sabbath. Taken together, a reasonable jury could infer from this evidence that Chavis was

---

4. Defendants also note that one of these hires had experience as an ASM. Chavis underwent ·managerial training at a prior position, however, which she argues provided her with experience equal to that of an ASM. Chavis Dep. at 168, 170–71; *see also* Chavis Decl. ¶¶ 4, 6). Construing the facts in the light most favorable to Chavis, there is a triable fact issue as to Chavis's qualifications relative to the successful candidate.

denied the promotions based on her religion and any non-discriminatory reason offered by Walmart is pretextual.

Because there exist genuine issues of material fact regarding Walmart's motivation for denying Chavis the MAPM promotions filled by other APMs, defendants' motion for summary judgment is denied as to the claims based on the Flanders and Hartford MAPM positions and granted as to the claims based on the other MAPM positions.

### 3. ASM Position

■ Based on the instant record, there is a genuine dispute as to whether Chavis was similarly situated to the candidate chosen for the ASM position at the Suffern store. Walmart argues that the successful candidate was more qualified than Chavis because he previously held the ASM position at a different store. Defs.' Mem. at 18–19. Chavis underwent assistant manager training for her prior job as Photo Lab Manager, which she argues gave her responsibilities comparable to those of an ASM. Chavis Dep. at 168, 170–71. A reasonable jury could infer that the combination of Chavis's work as an APM and her assistant manager training made her equally qualified to a candidate who was currently an ASM. Furthermore, David Yeagley, the manager of the Suffern store, told the hiring manager, Brett Purdue that he wanted Chavis to take on the ASM position, Koppell Decl. Ex. 5 ("Yeagley Dep.") at 65; Purdue told Yeagley he could not consider Chavis because of her need for an accommodation, id. at 57, 65–67. Because there is, at minimum, a factual

dispute regarding whether Chavis's "need for an accommodation was a motivating factor in the employer's decision," summary judgment is denied with respect to the ASM promotion claim. E.E.O.C. v. Abercrombie & Fitch Stores, Inc., —— U.S. ——, 135 S.Ct. 2028, 2032, 192 L.Ed.2d 35 (2015).[5]

### 4. Co–Manager Position

■ Even if Chavis could establish a prima facie case for the denial of the co-manager promotion, she presents no evidence of animus on the part of Stephanie Currao, the hiring manager for the co-manager position. Unlike the ASM hiring manager, Purdue, who directly referenced Chavis's need for a religious accommodation to explain why she was not interviewed, and the MAPM hiring manager, Flowers, who allegedly engaged in discriminatory scrutiny of Chavis on the basis of her religion, Ms. Currao is not alleged to have harbored any animus toward Chavis or even to have known about her religious beliefs or need for an accommodation. Therefore, Chavis has not raised a genuine issue of fact regarding Walmart's reasons for denying her the co-manager role, and summary judgment is granted on the co-manager promotion claim.

## V. Retaliation

### A. Applicable Law

■ To establish a prima facie case of retaliation, a plaintiff must demonstrate that: 1) she engaged in a protected activity; 2) her employer was aware of this activity; 3) the employer took adverse em-

---

**5.** Walmart claims that Chavis's failure to apply for a new accommodation disqualified her from consideration for the ASM promotion. Assuming that Sunday work is in fact required for the ASM position and Chavis would need an accommodation, Walmart provides no company policy or legal precedent requiring an employee—who has notified her employer about her religious observance and whose employer has actual knowledge of the need for an accommodation—to formally apply for an accommodation before she can be considered for a position.

ployment action against her; and 4) a causal connection exists between the alleged adverse action and the protected activity. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

■ Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to "articulat[e] a legitimate, non-retaliatory reason for the adverse employment action." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (citation omitted). "If the defendant provides such an explanation, 'the presumption of retaliation dissipates,' and the plaintiff must prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Id.* (first quoting *Jute v. Hamilton Sundstrand, Corp.*, 420 F.3d 166, 173 (2d Cir. 2005), and then quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013).

### B. Application

Defendants contend that Chavis's retaliation claim fails because (1) she did not engage in protected activity earlier than her filing of an EEOC complaint in late 2014, (2) none of the alleged conduct constitutes an adverse employment action, and (3) she has not demonstrated that Walmart's desire to retaliate was the but-for cause of any adverse employment action. These arguments are unpersuasive,

and summary judgment is denied as to Chavis's retaliation claim.

First, at oral argument, defendants argued that Chavis's request for a religious accommodation did not constitute protected activity under Title VII. "Title VII's anti-retaliation provision prohibits employers from "discriminat[ing] against any individual ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter." *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680 (2d Cir. 2016) (quoting 42 U.S.C. § 2000e–3(a)). "The term 'oppose,' being left undefined by the statute, carries its ordinary meaning: '[t]o resist or antagonize ...; to contend against; to confront; resist; withstand.'" *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009) (quoting Webster's New International Dictionary 1710 (2d ed. 1957)).

■ Regardless of whether Chavis's initial request for a religious accommodation constituted protected activity, I conclude that her appeal to the Open Door hotline after Walmart did not initially grant her an accommodation was protected activity for purposes of her retaliation claim.[6] After Walmart employees including Diana Jackson, then a MAPM, Jackie Jenask, from Labor Relations, and Tony Ristuccia, the Regional Asset Protection Manager, refused to grant Chavis an ac-

---

6. Courts in this District have held that a request for a religious accommodation itself constitutes protected activity for purposes of a Title VII retaliation claim, citing the rule in this Circuit that requests for disability accommodations are protected activity under the Americans with Disabilities Act. *See Jeffrey v. Montefiore Med. Ctr.*, No. 11 CIV. 6400 RA, 2013 WL 5434635, at *23 (S.D.N.Y. Sept. 27, 2013); *Jenkins v. N.Y. City Transit Auth.*, 646 F.Supp.2d 464, 473 (S.D.N.Y. 2009); *but see Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, No. CV 15-3675(DSD/KMM),

2017 WL 2880836, at *5 (D. Minn. July 6, 2017) (holding that a request for a religious accommodation is not protected activity under Title VII). The EEOC has also taken the position that requests for religious accommodations are protected activity. *See* EEOC Compl. Man. § 12–V.B (2008), https://www.eeoc.gov/policy/docs/religion.html. Nevertheless, because I hold that Chavis's call to the Open Door hotline constitutes protected activity, I do not reach the question of whether her initial request for an accommodation also did.

commodation to not work on Sundays, Chavis asked Ristuccia what her next step was. On his advice, she then called the Open Door hotline, which resulted in her accommodation request being granted. This process was functionally no different than if Chavis had formally appealed the denial of her request to Human Resources; she sought redress from an authority higher than her supervisors. A jury could infer from the record that Chavis's complaint to the Open Door hotline was based on a reasonable, good faith belief that that Walmart was violating Title VII by failing to grant her a religious accommodation from Sunday work. *Cooper*, 819 F.3d at 680–81 ("A plaintiff seeking to demonstrate that [s]he engaged in protected activity need not show that the behavior he opposed in fact violated Title VII; [s]he must, however, show that [s]he possessed a good faith, reasonable belief that the employer's conduct qualified as an unlawful employment practice under the statute." (internal citations and quotation marks omitted)); *see also Baker*, 445 F.3d at 546 ("It is an unlawful employment practice ... for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." (citation and internal quotation marks omitted)). Therefore, a reasonable jury could find that Chavis engaged in protected activity.

 Second, defendants contend that none of the allegedly retaliatory conduct cited by Chavis constitutes an adverse employment action. "Title VII's antiretaliation provision applies broadly to 'employer actions that would have been materially adverse to a reasonable employee or job applicant.'" *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 165

L.Ed.2d 345 (2006)). An action is materially adverse if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*

Chavis has raised several possible adverse employment actions that should proceed to trial. At minimum, "discriminatory failure to promote falls within the core activities encompassed by the term 'adverse actions.'" *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). As discussed in detail above, Chavis claims that she submitted applications to and was not hired for seventeen positions, sixteen of them without so much as an interview.

 That Chavis cannot establish a prima facie promotion claim as to each of the seventeen applications does not preclude her retaliation claim. A finding of unlawful retaliation generally does not depend on the merits of the underlying discrimination complaint. *See Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir. 1986). Although Chavis did not provide evidence from which a jury could infer that many of Walmart's promotion denials were motivated by discriminatory animus, she has raised a genuine issue of fact regarding whether at least some of the denials were motivated by *retaliatory* animus after she contacted the Open Door hotline. *See Heredia v. Small*, No. 98-cv-5351 (RLE), 2006 WL 47667, at *6 (S.D.N.Y. Jan. 9, 2006) (finding that alleged adverse actions following plaintiff's protected activity, "[e]ven if not individually actionable ... provide background for the [retaliation] claims asserted"); *cf. White*, 548 U.S. at 63, 126 S.Ct. 2405 ("The substantive [discrimination] provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status[ ] ... [t]he antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct."). The evidence

discussed below—including the number of applications, Chavis's long history at Walmart, and the fact that Yeagley recommended her for a managerial position—as well as the temporal proximity of the denials to her protected activity are sufficient for a jury to infer a causal connection at least as to some of the positions in question. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) ("[E]ven without direct evidence of causation, a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action. . . . [T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment . . . indirectly through temporal proximity.").

 Furthermore, I am unable to conclude as a matter of law that the alleged surveillance and scrutiny by Flowers could not also constitute an adverse employment action for Chavis's retaliation claim. Increased surveillance may constitute adverse employment action for the purposes of retaliation claims. *See Bind v. City of N.Y.*, No. 08-cv-11105 (RJH), 2011 WL 4542897, at *18 (S.D.N.Y. Sept. 30, 2011) (noting that a reasonable employee might be dissuaded from raising a grievance in the face of surveillance outside the workplace by an employer); *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F.Supp.2d 575, 596–97 (S.D.N.Y. 2010) (rejecting defendant's contention that the installation of a hidden surveillance camera to observe an employee who had complained of discrimination "can never be retaliatory as a matter of law"). A reasonable jury could infer that Chavis would be dissuaded from grieving the denial of an accommodation going forward based on supervisors repeatedly reviewing video footage of Chavis's arrival, departure, and time at work, *see* Chavis Dep. at 128–37; Savage Dep. at 58–59, 64; Koppell Decl. Ex. 6 ("Flowers Dep.") at 101, 114–15, and checking the trash cans in the APM office, *see* Chavis Dep. at 323–24; Flowers Dep. at 108–14. Accordingly, Chavis has satisfied her burden of showing that genuine issues of fact exist as to whether adverse employment actions were taken against her.[7]

 As discussed above, Walmart has articulated non-retaliatory motives for hiring candidates other than Chavis for each of the promotions at issue, specifically that the other candidates had more experience or outperformed Chavis in areas relevant to the job qualifications. Nonetheless, Chavis has offered evidence from which a jury could infer that, with respect to at least some of the positions, "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S.Ct. at 2533.

Specifically, Chavis points to several statements by her supervisors, noted above in the context of her failure-to-promote claims, from which a jury could infer that her accommodation request was a but-for cause of at least some of the promotion denials. Flowers allegedly termed Chavis the "fuel that feeds the fire" and told Yeagley that he wanted her out of the store. *See* Chavis Dep. at 121, 258; Asaad Decl. Ex. F ("O'Gara Dep.") at 38–39. The meaning of Flowers's statement is far from clear, but a reasonable jury could infer that it betrayed displeasure with Chavis's requests for special treatment. Additionally, when the office received a new dress

---

**7.** Chavis has satisfied her burden as to the remaining element at the prima facie stage as Walmart does not dispute that it was aware of her request for an accommodation.

code, Savage allegedly remarked that she would have to see about making an exception for Chavis, who, in accordance with her religious beliefs, only wore skirts. *See* Chavis Dep. at 324; O'Gara Dep. at 42.

Most significantly, prior to her request for an accommodation, Chavis had worked at Walmart for nearly 20 years and been promoted successfully numerous times— from direct store delivery receiver, to invoice clerk, to photo assistant manager, to claims associate, and finally to APM. *See* Pl.'s 56.1 Stmt. ¶ 1. After Chavis's request for an accommodation, however, she applied seventeen times for promotions and was denied—all but one time without an interview. Based on the statements and conduct of Chavis's supervisors and the temporal proximity of the applications and accommodation request, a reasonable jury could infer that Walmart's explanations for its decisions not to hire Chavis were pretextual and that the accommodation request was a but-for cause of at least some of the denials. Viewing the evidence in the light most favorable to Chavis, she has provided sufficient evidence to defeat summary judgment as to her retaliation claim.

## CONCLUSION

Accordingly, defendants' motion for summary judgment is denied as to Chavis's retaliation claim and promotion claims based on Walmart's failure to promote her to the Flanders MAPM, Hartford MAPM, and Suffern ASM positions. Defendants' motion is granted as to Chavis's failure to accommodate claim, hostile work environment claim, and promotion claims based on Walmart's failure to promote her to the market supply positions, the Kingston co-manager position, and the Valley Stream, Mohegan Lake, Watchung, and New Haven MAPM positions.

A scheduling order will issue simultaneously setting a date for trial and associated deadlines.

SO ORDERED.